21 Cal.Rptr.3d 741 (2004)
124 Cal.App.4th 711
ESTATE OF Betty Gross THOMAS, Deceased.
John Thomas, Plaintiff and Respondent,
v.
David DuBois Elder, as Cotrustee, etc., et al., Defendants and Appellants.
No. B170166.
Court of Appeal, Second District, Division Two.
December 2, 2004.
Review Denied February 16, 2005.[*]
*742 Freeman, Freeman & Smiley, Stephen M. Lowe and Todd M. Lander, Los Angeles, for Defendants and Appellants.
Poindexter & Doutré, James P. Drummy and Jeffrey A. Kent, Los Angeles, for Plaintiff and Respondent.
DOI TODD, J.
Defendants and appellants David DuBois Elder and Michael Olenick, as trustees of the Betty Gross Thomas Trust, appeal from an order granting in part a petition filed by plaintiff and respondent John Thomas, also known as Piri Thomas, to reallocate a $1.2 million trust distribution from principal to income. Appellants contend that under Probate Code section 16350, subdivision (d)(1)(B),[1] the distribution amounted to a "partial liquidation" which must be allocated to principal. We conclude that the trial court correctly determined that the amount of the distribution did not meet the threshold percentage level constituting a "partial liquidation" under the statute. Accordingly, the $1.2 million distribution was properly allocated to income.

FACTUAL AND PROCEDURAL BACKGROUND
John Thomas (Thomas) is the sole income beneficiary of a testamentary trust (trust) created in January 1986 by his wife, Betty Gross Thomas, shortly before her death. During his lifetime, Thomas is to receive "all trust income." Appellants, who are Betty Thomas's sons by prior marriages, are the trustees of the trust and hold a remainder interest in it. Upon Thomas's death, they will each receive a one-third interest in the trust and will hold as trustees their sister's one-third interest. Upon their sister's death, they will receive her interest as well.
The trust's sole asset is 32 shares of the Chelsea 23rd Street Corporation (Chelsea), representing approximately 16 percent of Chelsea's total ownership. Chelsea's primary asset is property in New York improved by a hotel which Chelsea owns and operates.
Chelsea is a subchapter S corporation. As a result, Chelsea's shareholders are responsible for paying tax on their allocable *743 share of Chelsea's reported income, regardless of whether that income is distributed to the shareholders. To enable the trust to hold shares in Chelsea as a subchapter S corporation, a court order in 1987 established the trust as a qualified subchapter S trust. This order required that the trust have only one income beneficiary who would be treated as the owner of the shares for the purpose of paying income tax. As the sole income beneficiary, Thomas has been responsible for paying all income tax on the Chelsea reported income allocable to the trust's shares.
Between 1987 and 2000, Thomas received approximately $2,295,000 in income from the trust. During the same time period, Chelsea withheld from all shareholders distribution of approximately $10.5 million of reported income. As of December 31, 2000, Thomas's share of the undistributed income amounted to $1,730,857. In addition to the income tax Thomas paid on income he received from the trust, he paid approximately $712,444 in income tax on the trust's share of undistributed income sometimes referred to as "phantom income."
Chelsea's financial statement as of December 31, 2000 reported total gross assets of $14,470,169. In October 2001, Chelsea distributed to its shareholders $7.5 million of the $10.5 million in undistributed income; the trust received $1.2 million as its pro rata share. Thomas had previously paid $494,000 in income tax on the $1.2 million distribution.
After seeking advice of counsel, appellants allocated the $1.2 million to trust principal, rather than income, on the ground that the total distribution ($7.5 million) constituted more than 20 percent of Chelsea's gross assets and thus amounted to a "partial liquidation" as defined by section 16350, subdivisions (c)(3) and (d)(1)(B).
In September 2002, Thomas filed a petition for adjustment between principal and income, or, in the alternative, for appointment of an independent special trustee to make adjustments between principal and income. He contended that the $1.2 million should have been allocated to income, because the amount of the distribution to the trust did not exceed 20 percent of Chelsea's gross assets. He further asserted that, at a minimum, an amount equal to what he had previously paid in income tax on the distribution$494,000 should be allocated to income. About the same time, he also filed two other petitions challenging legal, accounting and trustees' fees.
A trial on all matters was held in May 2003. The facts were essentially undisputed. The parties stipulated that the $1.2 million distribution was comprised of undistributed income and did not include the proceeds from the sale of any corporate asset. They further stipulated that Thomas had already paid income tax on the $1.2 million distribution. The court heard extensive argument from counsel concerning the application of section 16350 and took judicial notice of the legislative history of the statute submitted by Thomas.
On June 11, 2003, the trial court issued an order granting the petition to allocate the $1.2 million distribution to income and denying the fee petitions. It later incorporated those rulings into a statement of decision. With respect to the allocation issue, the statement of decision provided in relevant part: "Probate Code § 16350(b) mandates that, except as otherwise provided, a trustee shall allocate to income money received from an entity. The phrase `money received' refers to monies received by the trustee(s) NOT the cumulative amount of distribution to all distributees whether related or unrelated to the Trust. [¶] Accordingly, the $1.2 million distribution *744 which Respondents, on behalf of the Trust, received from the entity, Chelsea, is `money received by a trustee from an entity' under subdivision (b). The Court rejects Respondents' contention that the $1.2 million distribution should be allocated to principal as a partial liquidation pursuant to Probate Code § 16350(d)(1)(B)." The court further determined that if it had not allocated the entire distribution to income, section 16350, subdivision (d)(2), would have entitled Thomas to a credit against the distribution for the $494,000 he had previously paid in taxes.
Appellants timely appealed.

DISCUSSION
The issue before us is a narrow one. The only issue raised by this appeal is whether, for the purpose of determining if a partial liquidation has occurred under section 16350, subdivision (c)(3), "the total amount of money and property received in a distribution" is the amount received by the trustee or the amount of the entire distribution by an entity. (§ 16350, subd. (d)(1)(B).) Since this issue involves the interpretation of a statute and the application of that statute to undisputed facts, it is subject to this court's independent review. (People ex rel. Lockyer v. Shamrock Foods Co. (2000) 24 Cal.4th 415, 432, 101 Cal.Rptr.2d 200, 11 P.3d 956; Automotive Funding Group, Inc. v. Garamendi (2003) 114 Cal.App.4th 846, 851, 7 Cal.Rptr.3d 912.)

A. The Enactment of Section 16350.
Effective January 1, 2000, the Legislature enacted the Uniform Principal and Income Act (UPAIA). (§ 16320 et seq.) The UPAIA was designed to update the law to take account of new estate planning practices and financial instruments, as well as to make principal and income rules consistent with the prudent investor rule embodied in the Uniform Prudent Investor Act (§§ 16045-16054). (Recommendation: Uniform Principal and Income Act (February 1999) 29 Cal. Law. Revision Com. Rep. (1999) pp. 251-252.)
Section 16350, enacted as part of this legislation, directs how a trustee should allocate money to a trust received from an entity and provides: "(a) For the purposes of this section, `entity' means a corporation, partnership, limited liability company, regulated investment company, real estate investment trust, common trust fund, or any other organization in which a trustee has an interest .... [¶] (b) Except as otherwise provided in this section, a trustee shall allocate to income money received from an entity. [¶] (c) A trustee shall allocate to principal the following receipts from an entity: [¶] (1) Property other than money. [¶] (2) Money received in one distribution or a series of related distributions in exchange for part or all of a trust's interest in the entity. [¶] (3) Money received in total or partial liquidation of the entity. [¶] (4) Money received from an entity that is a regulated investment company or a real estate investment trust if the money distributed is a capital gain dividend for federal income tax purposes. [¶] (d) For purposes of paragraph (3) of subdivision (c): [¶] (1) Money is received in partial liquidation (A) to the extent that the entity, at or near the time of a distribution, indicates that it is a distribution in partial liquidation, or (B) if the total amount of money and property received in a distribution or series of related distributions is greater than 20 percent of the entity's gross assets, as shown by the entity's yearend financial statements immediately preceding the initial receipt. [¶] (2) Money is not received in partial liquidation, nor may it be taken into account under clause (B) of paragraph (1), to the extent that it does not exceed the amount of income tax that a trustee or beneficiary *745 is required to pay on taxable income of the entity that distributes the money. [¶] (e) A trustee may rely on a statement made by an entity about the source or character of a distribution if the statement is made at or near the time of distribution by the entity's board of directors or other person or group of persons authorized to exercise powers to pay money or transfer property comparable to those of a corporations board of directors."
Summarized, section 16350 provides that a trustee must allocate receipts from an entity to income, unless those receipts meet one of the exceptions established in section 16350, subdivision (c). If an exception applies, the receipts must be allocated to principal. Initially, appellants determined that the $1.2 million constituted a partial liquidation under section 16350, subdivision (c). They reasoned that the entire $7.5 million Chelsea distribution met the definition contained in section 16350, subdivision (d)(1)(B), because the amount of the distribution was "greater than 20 percent of the entity's gross assets, as shown by the entity's yearend financial statements immediately preceding the initial receipt." (16350, subd. (d)(1)(B).) The trial court concluded, to the contrary, that the amount measured by section 16350, subdivision (d)(1)(B), is the distribution received by the trust, not the entire distribution by the entity. Accordingly, it found that the $1.2 million distribution did not meet the 20 percent threshold necessary to qualify it as a partial liquidation. Thus, our task is to ascertain the meaning of the phrase "the total amount of money and property received in a distribution" as used in section 16350, subdivision (d)(1)(B).

B. The Statutory Language of Section 16350, Subdivision (d)(1)(B), Plainly Refers to the Amount of Money Received by the Trust.
"In statutory construction cases, our fundamental task is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.] `We begin by examining the statutory language, giving the words their usual and ordinary meaning.' [Citations.] If the terms of the statute are unambiguous, we presume the lawmakers meant what they said, and the plain meaning of the language governs. [Citations.]" (Estate of Griswold (2001) 25 Cal.4th 904, 910-911, 108 Cal.Rptr.2d 165, 24 P.3d 1191.) We turn first to the words of the statute themselves, giving them their usual, ordinary meanings and, if possible, giving each word and phrase significance. (Curle v. Superior Court (2001) 24 Cal.4th 1057, 1063, 103 Cal.Rptr.2d 751, 16 P.3d 166; Young v. Gannon (2002) 97 Cal.App.4th 209, 223, 118 Cal.Rptr.2d 187.) "An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in the light of the statutory scheme [citation]; and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed [citation]." (Lungren v. Deukmejian (1988) 45 Cal.3d 727, 735, 248 Cal.Rptr. 115, 755 P.2d 299.) "Exceptions to the general provisions of a statute are to be narrowly construed; only those circumstances that are within the words and reason of the exception may be included." (Corbett v. Hayward Dodge (2004) 119 Cal. App.4th 915, 921, 14 Cal.Rptr.3d 741.) At all times, "[o]ur foremost task remains ascertainment of the legislative intent, including consideration of `the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' [Citation.]" (City of Long Beach v. California Citizens for Neighborhood Empowerment (2003) 111 Cal.App.4th 302, 306, 3 Cal.Rptr.3d 473.)
Guided by the foregoing principles, we conclude that "the total amount of *746 money and property received in a distribution" means the total amount of money received by the trust, not the total amount of an entity's distribution. We find that the Legislature's use of the term "received" is significant. That word and its derivatives are used consistently throughout the UPAIA to refer to the character of money or property to be administered through the trust. (See, e.g., §§ 16324 ["`Income' means money or property that a fiduciary receives as current return from a principal asset"], 16355 ["A trustee shall allocate to principal: (a) To the extent not allocated to income under this chapter, assets received from a transferor during the transferor's lifetime ..."]; 16362, subd. (b) ["A trustee shall allocate to income 10 percent of the receipts from a liquidating asset and the balance to principal"].) In Miranda v. National Emergency Services, Inc. (1995) 35 Cal.App.4th 894, 905, 41 Cal.Rptr.2d 593, the court explained that consistent usage implies consistent meaning: "A word or phrase, or its derivatives, accorded a particular meaning in one part or portion of a law, should be accorded the same meaning in other parts or portions of the law, especially if the word is used more than once in the same section of the law."
More specifically, within section 16350, the words "received" and "receipts" are used consistently to refer to the amount to be allocated by the trustee. The statute generally provides that "a trustee shall allocate to income money received from an entity." (§ 16350, subd. (b).) In that context, the term "received" plainly refers only to money that the trustee has the power to allocate. The statute then proceeds to describe the exceptions to the general rulein other words, the circumstances under which a trustee must "allocate to principal the following receipts from an entity." (§ 16350, subd. (c).) Similar to the term "received" in subdivision (b), the term "receipts" in subdivision (c) must again refer only to money allocable by the trustee. The exception at issue here involves "[m]oney received in total or partial liquidation of the entity." (§ 16350, subd. (c)(3).) According to the statutory definition of this exception, "[m]oney is received in partial liquidation ... if the total amount of money and property received in a distribution or series of related distributions is greater than 20 percent of the entity's gross assets, as shown by the entity's yearend financial statements immediately preceding the initial receipt." (§ 16350, subd. (d)(1)(B).)
We must construe the term "received" used in section 16350, subdivision (d)(1)(B), to have the same meaning as when used in other portions of the statute. (Miranda v. National Emergency Services, Inc., supra, 35 Cal.App.4th at p. 905, 41 Cal.Rptr.2d 593; accord, Wilcox v. Birtwhistle (1999) 21 Cal.4th 973, 979, 90 Cal.Rptr.2d 260, 987 P.2d 727 ["words or phrases given a particular meaning in one part of a statute must be given the same meaning in other parts of the statute"]; Stillwell v. State Bar (1946) 29 Cal.2d 119, 123, 173 P.2d 313 ["it is a well-established rule of construction that when a word or phrase has been given a particular scope or meaning in one part or portion of a law it shall be given the same scope and meaning in other parts or portions of the law"].) Thus, money "received in a distribution" necessarily refers only to money that the trustee has the power to allocate. The statute cannot reasonably be construed to refer to money distributed by an entity over which the trustee has no control. To construe the term "received" more expansively than when used in other portions of the statute would also be contrary to the settled principle of statutory construction that "[e]xceptions to the general rule of a statute are to be strictly construed." (Barnes v. *747 Chamberlain (1983) 147 Cal.App.3d 762, 767, 195 Cal.Rptr. 417; accord Corbett v. Hayward Dodge, supra, 119 Cal.App.4th at p. 921, 14 Cal.Rptr.3d 741.)
Our conclusion is buttressed by a separate subdivision in section 16350 that qualifies subdivision (d)(1)(B): "Money is not received in partial liquidation, nor may it be taken into account under clause (B) of paragraph (1), to the extent that it does not exceed the amount of income tax that a trustee or beneficiary is required to pay on taxable income of the entity that distributes the money." (16350, subd. (d)(2).) In other words, "money received in a distribution" cannot be considered a partial liquidation allocable to trust principal to the extent that the money is needed to satisfy the recipients tax burden. The fact that the deduction applies only to "a trustee or beneficiary" is a further reason to construe section 16350, subdivision (d)(1)(B), as referring only to money received by the trust. It would make little sense to calculate whether a distribution amounted to more than 20 percent of an entity's gross assets by deducting only one party's taxes from the entity's distribution to all parties. On the other hand, the tax deduction is reasonable and necessary if the only amount of money at issue is the distribution to the trust.[2]
Appellants do not focus on language referring to money "received in a distribution"; rather, they rely on a dictionary definition of the term "partial liquidation," which describes a distribution of assets to all shareholders. (See Blacks Law Dict. (8th ed.2004) p. 950, col. 1.) But that definition is irrelevant, given that the statute itself provides its own definition of the circumstances constituting a "partial liquidation." (16350, subd. (d)(1).) "If the Legislature has provided an express definition of a term, that definition ordinarily is binding on the courts." (Curle v. Superior Court, supra, 24 Cal.4th at p. 1063, 103 Cal.Rptr.2d 751, 16 P.3d 166.) Thus, we must evaluate whether the $1.2 million distribution constituted a partial liquidation as that term is defined by statute, not by the dictionary.
Appellants also rely heavily on a Pennsylvania case, In re Estate of Anthony (1966) 423 Pa. 401, 223 A.2d 857, 862-863, in which the court characterized a distribution of almost 25 percent of an entity's assets as a partial liquidation allocable to principal. In our view, however, that case highlights the significance of the statutory language chosen by our Legislature. There, the pertinent statute defined a partial liquidation by expressly referring to amounts paid to all shareholders, providing in relevant part: "Where the assets of a corporation are liquidated, wholly or partially, amounts paid upon corporate shares as cash dividends ... shall be deemed income, all other amounts paid upon corporate shares on disbursement of the corporate assets to the stockholders shall be deemed principal." (Id. at p. 859, fn. 1.) Here, in sharp contrast, section 16350, subdivision (d)(1)(B), defines money "received in partial liquidation" as an amount "received in a distribution"not as amounts paid to all shareholders.
Indeed, to support their assertion that the amount referred to in section 16350, *748 subdivision (d)(1)(B), is the amount distributed by an entity to all shareholders, appellants are forced to argue that the term "received" has a different meaning in that particular subdivision than when used in other portions of the statute. Appellants point to the Legislature's use of the term "total amount of money" to argue that the focus of that subdivision shifts from the amount received by the trust to the amount paid out by the entity. We do not believe that the plain language of section 16350, subdivision (d)(1)(B), reflects any intent on the part of the Legislature to depart from the general rule that words used in one portion of a statute are given the same meaning in other portions of the statute. (See, e.g., Wilcox v. Birtwhistle, supra, 21 Cal.4th at p. 979, 90 Cal.Rptr.2d 260, 987 P.2d 727.) Rather, the term "total amount" directly modifies the language immediately following, which is "money and property received in a distribution or series of related distributions...." Had the Legislature intended the subdivision to have a different focus, it easily could have employed language referring to amounts paid to stockholders, akin to that language of the statute at issue in In re Estate of Anthony. (In re Estate of Anthony, supra, 223 A.2d at p. 859, fn. 1; see California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997) 14 Cal.4th 627, 633, 59 Cal.Rptr.2d 671, 927 P.2d 1175 [courts cannot rewrite a statute so as to make it conform to an unexpressed intent].) The language of section 16350, subdivision (d)(1)(B), demonstrates that the focus of the subdivision remains on the amount of money that the trustee has the power to allocate.
The plain language of section 16350, subdivision (d)(1)(B), refers only to the amount of money and property received by the trust. Our interpretation accords the same meaning to the same words or their derivatives used throughout the statute, and harmonizes each of the subdivisions within section 16350.

C. The Legislative History of Section 16350 Does Not Contradict the Statute's Plain Meaning.
Where, as here, the plain language of a statute expresses legislative intent, resort to extrinsic aids is unnecessary. (E.g., In re Jennings (2004) 34 Cal.4th 254, 263, 17 Cal.Rptr.3d 645, 95 P.3d 906.) We nonetheless briefly discuss the legislative history of section 16350.[3]
The parties concede, and our independent review confirms, that nothing in the statute's legislative history directly addresses the meaning of the phrase "the total amount of money and property received in a distribution" used in section 16350, subdivision (d)(1)(B). Nonetheless, appellants assert that two aspects of the statute's legislative history support their interpretation of the phrase.
First, according to appellants, the UPAIA's legislative history shows that the Legislature did not intend to change the former allocation rules concerning partial liquidations. Because the former rules relied on traditional definitions of liquidations, they assert that section 16350, subdivision (d)(1)(B), therefore cannot be read as creating a new definition of what constitutes a partial liquidation allocable to principal. But the legislative history contradicts this assertion. The predecessor statute to section 16350 did not contain a definition of "partial liquidation" that corresponds to the 20 percent threshold measurement. *749 Former section 16306 provided in relevant part: "(b) ... [A] corporate distribution is principal if the distribution is pursuant to any of the following: [¶] ... [¶] (3) A total or partial liquidation of the corporation, including any distribution which the corporation indicates is a distribution in total or partial liquidation or any distribution of assets, other than cash, pursuant to a court decree or final administrative order by a government agency ordering distribution of the particular assets [¶].... [¶] (d) Except as provided in subdivisions (a), (b), and (c), all corporate distributions are income...." (Former § 16306, added by Stats.1986, ch. 820, § 40, pp. 2776-2777, repealed by Stats.1999, ch. 145, § 4.) Indicating that the Legislature intended to modify the law by adding a new standard by which to determine whether a "partial liquidation" has occurred, a bill analysis prepared by the Senate Rules Committee listed the enactment of section 16350, subdivision (d), under the heading "Rule clarifications and changes." (Sen. Rules Com., Off. of Sen. Floor Analyses, analysis of Assem. Bill No. 846 (1999-2000 Reg. Sess.) as amended July 2, 1999, p. 4.) A Senate Judiciary Committee bill analysis similarly characterized section 16350, subdivision (d). (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 846 (1999-2000 Reg. Sess.) as amended June 15, 1999, p. 4.) Legislative history therefore indicates that section 16350, subdivision (d)(1)(B), constituted a change in the law and the enactment of a new definitional standard for determining whether a distribution constitutes a partial liquidation for allocation purposes.
Second, appellants note that multiple reports within the UPAIA's legislative history describe section 16350, subdivision (d), in the following manner: "Distributions from corporations and partnerships that exceed 20 percent of the entity's gross assets would be designated as partial liquidation, whether so intended or not, and will thus be allocated by the trustee to principal." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 846 (1999-2000 Reg. Sess.) as amended June 15, 1999, p. 4); see also Sen. Rules Com., Off. of Sen. Floor Analyses, analysis of Assem. Bill No. 846 (1999-2000 Reg. Sess.) as amended July 2, 1999, p. 4; Recommendation: Uniform Principal and Income Act (February 1999) 29 Cal. Law. Revision Com. Rep. (1999) p. 254; Revision of Uniform Principal and Income Act, Draft for Approval for meeting of National Conference of Commissioners on Uniform State Laws, July 25 to Aug. 1, 1997, p. 34.) Focusing on the phrase "[d]istributions from corporations," appellants contend that this description confirms that the 20 percent threshold is to be measured by the entity's distribution to all shareholders. Appellants further assert that the Law Revision Commission comment to section 16350, which provides that "[i]f a distribution exceeds 20 of the entity's gross assets, the entire distribution is a partial liquidation" likewise confirms that subdivision (d)(1)(B) refers to the totali.e., entireamount that the entity disperses to all recipients.
We find, however, that these comments are equally capable of an alternative interpretation. Both the legislative reports and the Law Revision Commission Reports and comments consistently employ the term "distribution" to refer to the amount that is received by the trust. If the term "distribution" means the amount received by the trust, then the legislative comments comport with our construction of the statute. For example, when we employ this definition in the Senate Judiciary Committee report's earlier description of section 16350, subdivision (d), the comment now provides that amounts received by a trust "from corporations and partnerships that exceed 20 percent of the entity's gross assets would be designated as partial liquidation, whether so intended or not, and *750 would thus be allocated by the trustee to principal." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 846 (1999-2000 Reg. Sess.) as amended June 15, 1999, p. 4.) Moreover, utilizing the more limited definition of "distribution" results in making the initial reference to a "distribution" correspond to the comment's final clause that the distribution is one that the trustee has the power to allocate. If the term "distribution" is more broadly defined to include the amounts provided to all shareholders, then the final clause is illogical, because the trustee does not have the power to allocate amounts outside of the trust.
Because the UPAIA's legislative history is capable of alternative interpretations, we need not rely on it. Legislative history is a helpful interpretive tool only when it is unambiguous. (Medical Board v. Superior Court (2003) 111 Cal.App.4th 163, 179, 4 Cal.Rptr.3d 403.) "Only `[a] clear statement of intent allows a court to reasonably indulge the inference that the individual members of the Legislature may have given at least a little thought to that statement before voting on the bill.' [Citation.]" (Ibid.) Thus, though the legislative history of section 16350, subdivision (d)(1)(B), sheds little light on the meaning of the disputed phrase "the total amount of money and property received in a distribution," it gives us no reason to depart from our construction of the statute's plain meaning.

D. Policy Considerations Do Not Require Us to Disregard the Statute's Plain Meaning.
Finally, appellants urge us to disregard the plain meaning of section 16350, subdivision (d)(1)(B), asserting that absurd consequences will result from interpreting the 20 percent threshold to apply to the amount received by the trust. (See Unzueta v. Ocean View School Dist. (1992) 6 Cal.App.4th 1689, 1698, 8 Cal.Rptr.2d 614 ["`"The literal meaning of the words of a statute may be disregarded to avoid absurd results"'"].) But as the Unzueta court aptly observed, "[a]bsurdity, like beauty, is in the eye of the beholder," and we may therefore disregard a statute's plain language only in extreme cases. (Ibid.)
This is not an extreme case. We are not troubled by the fact that, on occasion, a distribution could be considered a partial liquidation as to one trust but not another. Using the example cited by appellants, if another trust had held 45 percent of Chelsea, then its percentage of the total $7.5 million distribution would have exceeded the 20 percent threshold and been considered a partial liquidation as to that trust under section 16350, subdivision (d)(1)(B). Appellants assert that the Legislature could not have intended such disparate results, which depend on a trust's interest in the entity. We find nothing in the legislative history, however, that would preclude such a result, given that the focus of section 16350 is on the amount that the trustee has the power to allocate. Moreover, we note that section 16350, subdivision (d)(1)(B), provides a narrow definition of "partial liquidation" to be used only when the entity itselffor whatever reason chooses not to characterize a large distribution as a partial liquidation. (See 16350, subd. (d)(1).) Thus, we do not believe that the rare instance in which a distribution to two or more trusts may result in a different characterization is reason enough to disregard the statutes plain meaning.
On the other hand, this case illustrates how absurd consequences could result from interpreting the 20 percent threshold to apply to the total amounted distributed by an entity to all shareholders. According to appellants' interpretation of the statute, the entire $1.2 million distribution *751 should be allocated to principal, regardless of the fact that Thomas has already paid almost $500,000 in income tax on that distribution. They assert that their interpretation accords an appropriate balance of the benefits and burdens of subchapter S corporation status. We disagree. Appellants' interpretation disregards an important provision of section 16350 indicating that the focus of the statute is on money received by the trust. (See City of San Jose v. Superior Court (1993) 5 Cal.4th 47, 55, 19 Cal.Rptr.2d 73, 850 P.2d 621 ["We ordinarily reject interpretations that render particular terms of a statute mere surplusage, instead giving every word some significance"].) Section 16350, subdivision (d)(2), confirms that a trustee's or beneficiary's income tax obligation on the distribution must be deducted from any amount potentially classified as a "partial liquidation." Application of this provision makes sense only if the taxable amount to be considered is the amount received by the trust, not the amount distributed to all shareholders.
In sum, employing the plain meaning of section 16350, subdivision (d)(1)(b), to apply to the amount received by the trust results "in wise policy rather than mischief or absurdity." (Renee J. v. Superior Court (2001) 26 Cal.4th 735, 744, 110 Cal. Rptr.2d 828, 28 P.3d 876.)

DISPOSITION
The trial courts order allocating Chelsea's $1.2 million distribution to trust income is affirmed. Respondent is awarded costs on appeal.
We concur: BOREN, P.J., and ASHMANN-GERST, J.
NOTES
[*] Brown, J., dissented.
[1] Unless otherwise indicated, all further statutory references are to the Probate Code.
[2] We reject appellants' assertion that section 16350, subdivision (d)(2), is irrelevant to the analysis here, because the subdivision is phrased in the present tense and it was undisputed that there were no presently owed taxes on the $1.2 million distribution. Section 9 expressly provides: "The present tense includes the past and future tenses, and the future, the present." Thus, section 16350, subdivision (d)(2), must be construed to address the trustee's or beneficiary's legal duty to pay taxes on the distribution, regardless of time.
[3] At Thomas's request, the trial court took judicial notice of an analysis prepared by the Legislative Intent Service, which appears to be a comprehensive compilation of the UPAIA's legislative history.