Filed 6/5/24 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| DONALD VERVERKA,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>DEPARTMENT OF VETERANS<br>AFFAIRS,<br><br>        Defendant and Respondent. | A163571<br><br>(Napa County<br> Super. Ct. No. 18CV001376)<br><br>ORDER MODIFYING OPINION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on May 6, 2024, be modified as follows:

On pages 12–13: Delete the sentence beginning with "Likewise, here, we find it highly unlikely" on page 12 and ending with "based on nothing more than stray remarks" on page 13, and replace with the following sentence:

"Likewise, here, we find it highly unlikely the Legislature intended to impose liability on employers whenever a protected disclosure may have had minimal influence on their employment decisions, as this could easily lead to liability based on nothing more than passing remarks unrelated to the disputed employment decision."

There is no change in the judgment.

1

_____
Humes, P.J.

Trial Court: Napa County Superior Court

Trial Judge:        Hon. Victoria D. Wood

Counsel:

Workplace Advocates, Barbara E. Cowan; Elhert Hicks, Allison Elhert for Plaintiff and Appellant.

Rob Bonta, Attorney General, Chris A. Knudsen, Senior Assistant Attorney General, Fiel D. Tigno, Supervising Deputy Attorney General, Joshua C. Irwin and John T. McGlothlin, Deputy Attorneys General for Defendant and Respondent.

*Ververka v. Department for Veterans Affairs* A163571

Filed 5/6/24; Certified for Publication 5/22/24 (order attached) (unmodified opinion)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DONALD VERVERKA,<br><br>  Plaintiff and Appellant,<br>v.<br>DEPARTMENT OF VETERANS AFFAIRS,<br><br>  Defendant and Respondent. | A163571<br><br>(Napa County<br> Super. Ct. No. 18CV001376) |

Plaintiff Donald Ververka alleged defendant California Department of Veterans Affairs (CalVet) terminated him in violation of Labor Code section 1102.5, a statute prohibiting retaliation against whistleblowing employees.[1] The jury found that although Ververka made protected disclosures that were "contributing factor[s]" in CalVet's decision to remove him, CalVet was not liable because it met its burden under section 1102.6 to prove it would have made the same decision for non-retaliatory reasons. After the trial court entered judgment for CalVet, Ververka moved to vacate the judgment. The court denied the motion.

On appeal, Ververka contends the trial court erred in denying his motion to vacate the judgment. Citing *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203 (*Harris*), a case brought pursuant to the Fair Employment

---

[1] Undesignated statutory references are to the Labor Code.

1

and Housing Act (FEHA; Gov. Code, § 12900 et seq.), he argues that an employer's "same decision" showing under section 1102.6 precludes only an award of damages and backpay and an order of reinstatement and, as a result, he was entitled to declaratory relief and reasonable attorney's fees and costs. CalVet has filed a protective cross-appeal, advancing alternative legal grounds for affirming the judgment.

We conclude the whistleblower statutes (§ 1102.5 et seq.) are not reasonably susceptible to Ververka's interpretation. We therefore affirm the judgment and dismiss the cross-appeal as moot.

## I. BACKGROUND

CalVet is a state agency tasked with operating veterans homes within California. During Ververka's tenure, CalVet's Undersecretary was Russell Atterberry, who reported to CalVet's Secretary, Vito Imbasciani. In 2014, the Governor appointed Ververka as administrator of the veterans home in Yountville. As administrator, Ververka oversaw all aspects of the home's operation, including staffing, budgeting, and maintaining the home's compliance with applicable laws and regulations. He served as administrator until May 2017, when the Governor's Office removed him from his position.

### A. Events Leading Up to Ververka's Removal

Ververka made reports to an independent state agency and to his superiors at CalVet regarding safety and health issues at the Yountville home, such as lack of heating and air-conditioning and inoperable elevators, and about his belief that CalVet was violating federal law. He reiterated many of his concerns to Imbasciani in May 2017.

A few days later, Atterberry "made the calls" to the Governor's Office to recommend Ververka's removal, and the Governor's Office informed Ververka the next day that he was being removed.

2

Atterberry claimed he recommended Ververka's removal because of his poor management of the Yountville home. Atterberry stated Ververka entered into expensive "emergency contracts" for numerous home repairs "because of either failed—or expired contracts or not planning for—not planning ahead for those needs," he was unprepared for and "dismissive" at meetings for a major project, and he failed to prioritize the reproduction of documentation regarding the home that the federal Department of Veterans Affairs had lost so that the home could receive federal funding.

## B. Ververka's Lawsuit

In October 2018, Ververka sued CalVet for violation of section 6310, unlawful whistleblower retaliation under section 1102.5, and violation of Health and Safety Code section 1278.5, alleging that CalVet wrongfully terminated him for reporting his concerns about patient and employee safety and illegal conduct. Ververka sought damages, injunctive relief, a declaration that CalVet violated section 1102.5, attorney's fees, and costs.

The case proceeded to trial, where a jury found in favor of CalVet on all of Ververka's claims. On Ververka's section 1102.5 claim, the jury found that some of the reports he made to CalVet constituted protected disclosures under the statute. The jury further found that Ververka's protected disclosures were "contributing factor[s]" in CalVet's recommendation to remove him as administrator of the Yountville home. Nonetheless, the jury found in favor of CalVet because it had proved by clear and convincing evidence that it would have made the same recommendation at that time "for legitimate, independent reasons." The trial court entered judgment for CalVet.

Ververka moved to vacate the judgment under Code of Civil Procedure section 663. He argued that because the jury found that some of his

3

protected activities under section 1102.5 were "contributing factor[s]" in CalVet's recommendation to remove him, he was entitled to declaratory relief, injunctive relief, reasonable attorney's fees, and costs. Although the jury also found that CalVet would have made the same recommendation for legitimate, independent reasons—colloquially called the "same decision" defense—Ververka contended that under *Harris, supra*, 56 Cal.4th 203, the same decision defense only bars a plaintiff from recovering damages, backpay, and an order of reinstatement; a plaintiff may still be entitled to declaratory and injunctive relief and reasonable attorney's fees and costs where the employer was found to have committed an unlawful employment action.

The trial court denied Ververka's motion to vacate the judgment, concluding *Harris*'s analysis was specific to the FEHA and did not extend to section 1102.5 claims, which are evaluated under the procedures set forth in section 1102.6.

## II. DISCUSSION

Ververka's sole claim on appeal is that the trial court erred in denying his motion to vacate the judgment. As he did in the trial court, Ververka contends that under *Harris*, he is entitled to declaratory relief and attorney's fees and costs on his section 1102.5 claim based on the jury's findings that some of his protected disclosures were "contributing factor[s]" in CalVet's recommendation to remove him.[2]

### A. *Standards of Review*

Code of Civil Procedure section 663 authorizes a trial court to vacate a judgment that has an "[i]ncorrect or erroneous legal basis . . . , not consistent

---

[2] Ververka appears to have abandoned his claim for injunctive relief, as he does not argue on appeal that he is entitled to such relief.

4

with or not supported by the facts," and enter a different judgment. The procedure "is designed to enable speedy rectification of a judgment rendered upon erroneous application of the law to facts which have been found by the court or jury or which are otherwise uncontroverted." (*Forman v. Knapp Press* (1985) 173 Cal.App.3d 200, 203.)

Ververka's motion to vacate the judgment turns on an interpretation of California's whistleblower statutes, specifically sections 1102.5 and 1102.6. Issues involving the interpretation of a statute are reviewed de novo. (*Howard Contracting, Inc. v. G.A. MacDonald Construction Co.* (1998) 71 Cal.App.4th 38, 49.) " 'In statutory construction cases, our fundamental task is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' " (*Estate of Thomas* (2004) 124 Cal.App.4th 711, 719.) Before proceeding to an analysis of the whistleblower statutes, we examine *Harris*, the FEHA case Ververka relies on to support his argument that the trial court erred by denying his motion to vacate the judgment.

### B. Harris *and the FEHA*

The FEHA provides that it is "an unlawful employment practice" for an employer to take an adverse employment action against a person "because of" their membership in a protected class. (Gov. Code, § 12940.) "Since plaintiffs in employment discrimination cases most often lack direct evidence of the employer's discriminatory intent," courts frequently rely on a three-part test developed in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 (*McDonnell Douglas*) to evaluate discrimination claims: " '(1) The complainant must establish a prima facie case of discrimination; (2) the employer must offer a legitimate reason for his actions; (3) the complainant must prove that this reason was a pretext to mask an illegal motive.' " (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 68.)

5

In *Harris*, our high court held the *McDonnell Douglas* test was inapplicable to cases where a mix of discriminatory and legitimate reasons motivated the employer's decision; it therefore construed Government Code section 12940 to determine the appropriate standard for evaluating discrimination claims in such cases. (*Harris, supra*, 56 Cal.4th at p. 215.) In *Harris*, a bus driver alleged the City of Santa Monica fired her because of her pregnancy. The City asked the trial court to instruct the jury that if it found a mix of discriminatory and legitimate motives, the City could avoid liability by proving the "same decision" defense. The trial court rejected the instruction, and the jury found in favor of the employee. The Court of Appeal reversed, holding that the court's refusal to give the requested instruction was prejudicial error. (*Id.* at p. 211.)

Our high court agreed with the Court of Appeal in part, concluding that a trial court may not award damages, backpay, or an order of reinstatement when the employer has proven it would have made the same decision absent unlawful discrimination, but it held that the employee may still be awarded declaratory or injunctive relief when they prove that unlawful discrimination was a "substantial factor" motivating the adverse employment action. (*Harris, supra*, 56 Cal.4th at p. 211.) In coming to this conclusion, the *Harris* court interpreted the phrase "because of" in Government Code section 12940 to clarify the "kind or degree of causation" required to prove unlawful discrimination in mixed-motive cases. (*Harris*, at p. 215.) It initially determined that there were three possible meanings of the phrase: "(1) discrimination was a 'but for' cause of the employment decision, (2) discrimination was a 'substantial factor' in the decision, and (3) discrimination was simply 'a motivating factor.' " (*Id.* at p. 217.)

6

Since "because of" was susceptible to multiple meanings, the *Harris* court considered the legal consequences that would result from the employer's proof that it would have made the same decision in the absence of discrimination, noting that the FEHA expressly declares "two related but different purposes . . . to restore aggrieved persons to the position they would have occupied had the discrimination not occurred" and " 'to provide effective remedies that will . . . prevent and deter unlawful employment practices.' " (*Harris, supra*, 56 Cal.4th at pp. 222–225, citing Gov. Code, §§ 12920, 12920.5.)

Considering the FEHA's purposes, *Harris* concluded that a same decision showing "is not a complete defense to liability when the plaintiff has proven that discrimination on the basis of a protected characteristic was a substantial factor motivating the adverse employment action." (*Harris, supra*, 56 Cal.4th at p. 225.)  It reasoned that "it would tend to defeat the preventive and deterrent purposes of the FEHA to hold that a same-decision showing entirely absolves an employer of liability when its employment decision was substantially motivated by discrimination." (*Ibid.*) "[D]iscrimination can be serious, consequential, and even by itself determinative of an employment decision without also being a 'but for' cause." (*Id.* at p. 229.)

The *Harris* court further concluded that where a plaintiff has proven that discrimination was a substantial motivating factor in a termination decision, an employer's same decision defense precludes an award of damages and backpay and an order of reinstatement.  (*Harris, supra*, Cal.4th at pp. 234–235.)  It explained that awarding an employee such relief where an employer would have terminated the employee for other—legitimate— reasons would result in "an unjustified windfall and unduly limit[] the

7

freedom of employers to make legitimate employment decisions." (*Id.* at p. 233.) But "proof that an adverse employment decision was substantially motivated by discrimination may warrant a judicial declaration of employer wrongdoing," and injunctive relief may be appropriate to stop discriminatory practices. (*Id.* at p. 234.) It may also "be appropriate that the employer pay reasonable attorney's fees and costs for litigation for which its own wrongdoing has been shown to be substantially responsible." (*Id.* at p. 235.)

In short, the FEHA expressly defines an "unlawful employment practice" as an adverse action taken "because of" an employee's protected characteristic (Gov. Code, § 12940, subd. (a)), and *Harris* clarifies that "because of" means the employee's protected characteristic was at least a "*substantial* motivating factor" in the adverse action (*Harris, supra*, 56 Cal.4th at pp. 215, 232). Since the FEHA states that one of its purposes is to deter and prevent "unlawful employment practices," a same decision defense is only a partial defense in FEHA cases where the employee has proven that discrimination was a "substantial motivating factor" in the adverse action. (Gov. Code, § 12920.5; *Harris*, at p. 232.)

## C. An Employer's Same Decision Showing Is a Complete Defense Under Section 1102.6.

Section 1102.5 provides protections to employees who report wrongdoing to authorities. Specifically, the statute prohibits an employer from "retaliat[ing] against" an employee "for" disclosing information that the employee believes discloses a violation of law or noncompliance with regulations. (§ 1102.5, subd. (b).) "A report made by an employee of a government agency to their employer" constitutes a protected disclosure under section 1102.5. (*Id.*, subd. (e).) The statute "reflects the broad public policy interest in encouraging workplace whistle-blowers to report unlawful

8

acts without fearing retaliation." (*Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 77.)

In 2003, the Legislature amended the Labor Code in response to "the recent spate of false business reports and other illegal activity by Enron, WorldCom and others." (Stats. 2003, ch. 484, § 3; Assem. Com. on Judiciary, Analysis of Sen. Bill No. 777 (2003–2004 Reg. Sess.) as amended May 29, 2003, p. 1.) As relevant here, it added section 1102.6, which provides:

"In a civil action or administrative proceeding brought pursuant to Section 1102.5, once it has been demonstrated by a preponderance of the evidence that an activity proscribed by Section 1102.5 was a contributing factor in the alleged prohibited action against the employee, the employer shall have the burden of proof to demonstrate by clear and convincing evidence that the alleged action would have occurred for legitimate, independent reasons even if the employee had not engaged in activities protected by Section 1102.5."

CalVet contends that section 1102.6 establishes a two-step procedure for determining whether an employer has violated section 1102.5. According to CalVet, if an employer satisfies its burden at the second step in making a same decision showing, the employer is not liable regardless of whether the employee made an initial showing that his or her protected disclosure was a "contributing factor" in the adverse employment action. CalVet also notes that section 1102.6's "contributing factor" standard is lower than *Harris*'s "substantial motivating factor" standard. (*Harris, supra*, 56 Cal.4th at p. 232.)

Ververka disagrees with CalVet's interpretation, asserting that section 1102.6's codification of the same decision defense does not address whether the defense is a complete defense where, as here, the jury has found that a

9

plaintiff's protected disclosure was a "contributing factor" in an adverse employment action. He insists that if "FEHA plaintiffs who establish that discrimination was a motivating reason for adverse actions can obtain declaratory and/or injunctive relief, as well as fees and costs, then the same should be true for whistle-blower plaintiffs who establish . . . that protected activities" were a "contributing factor" to the adverse actions they suffered, considering that both statutory schemes serve a "broad, remedial policy purpose." Ververka acknowledges section 1102.6 establishes different burdens of proof than those for FEHA claims (*Harris, supra*, 56 Cal.4th at p. 239), but he contends this has "no bearing" on the issue of whether the same decision defense bars all relief in a section 1102.5 case. Applying the rules of statutory construction, we conclude that CalVet has the better argument. (See *Estate of Thomas, supra*, 124 Cal.App.4th at pp. 719–720.)

To begin with, section 1102.6 does not merely codify the same decision defense and specify the parties' burdens of proof; it sets forth "the governing framework for the presentation and evaluation of whistleblower retaliation claims brought under section 1102.5." (*Lawson v. PPG Architectural Finishes, Inc.* (2022) 12 Cal.5th 703, 712, 718 (*Lawson*).) In *Lawson*, the Ninth Circuit asked our high court to determine whether section 1102.6's two-step framework governs the evaluation of section 1102.5 claims instead of the three-step *McDonnell Douglas* framework. (*Lawson*, at p. 707.) The *Lawson* court concluded section 1102.6 provides the "applicable substantive standards and burdens of proof for both parties in a section 1102.5 retaliation case" and is a "complete set of instructions" for adjudicating whistleblower retaliation claims. (*Lawson*, at p. 712.)

This alone distinguishes *Harris*. In the absence of a procedural statute like section 1102.6, the *Harris* court relied on the specific language and

10

purposes of the FEHA to determine the level of causation required to prove unlawful discrimination in mixed motive cases. (*Harris, supra*, 56 Cal.4th at pp. 215, 223–229.) In comparison, by enacting section 1102.6, the Legislature "has spoken" about the exact standards to be used for evaluating whistleblower retaliation claims brought pursuant to section 1102.5. (*City and County of San Francisco v. Sweet* (1995) 12 Cal.4th 105, 121; *Lawson, supra*, 12 Cal.5th at p. 712.)

Further, Ververka's argument that a plaintiff may be entitled to certain relief even if the employer satisfies its burden under section 1102.6 is belied by the statute's plain language. (See *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 735 [statute's " 'plain language . . . establishes what was intended by the Legislature.' "].) Section 1102.6 begins by stating that its two-step framework applies in a "civil action," without limitation. (See Code Civ. Proc., § 30 [defining "civil action" as including declaratory relief].) There is no language in section 1102.6 exempting certain claims for relief. By its terms, once the employee has met its burden to show that a protected disclosure was a "contributing factor" in an adverse employment action, the statute simply shifts the burden to the employer. (§ 1102.6.) Thus, a straightforward reading of section 1102.6 is that if the jury finds the employer satisfies its second-step burden in a civil case, a plaintiff is barred from all relief. (See *Vatalaro v. County of Sacramento* (2022) 79 Cal.App.5th 367, 387–388 [affirming summary judgment in favor of employer where it met its burden under section 1102.6 to make a same decision showing].)

Nor is there anything in the whistleblower statutes indicating the Legislature intended a "contributing factor" on its own to be a sufficient basis for relief in a civil action, as Ververka suggests. Although section 1102.5

11

prohibits retaliation "for" an employee's protected disclosure (§ 1102.5, subd. (b)), this does not necessarily equate to a finding that a protected disclosure was a "contributing factor" in an adverse employment action (§ 1102.6). (See *Lawson, supra*, 12 Cal.5th at p. 714, citing *Rookaird v. BNSF Ry. Co.* (9th Cir. 2018) 908 F.3d 451, 461 [" ' "A 'contributing factor' includes 'any factor, which alone or in connection with other factors, *tends to affect in any way* the outcome of the decision,' " ' " italics added].) To hold otherwise would render the "contributing factor" language redundant (§§ 1102.5, 1102.6), thereby violating the principle that "we must interpret statutes to avoid redundancy and give significance to each word and phrase" whenever possible. (*People v. Jennings* (2019) 42 Cal.App.5th 664, 672.) Moreover, *both* steps in section 1102.6 refer to the employer's "prohibited action" as "alleged," further indicating the Legislature did not intend for a "contributing factor" alone to prove a violation of section 1102.5. (See Black's Law Dict. (11th ed. 2019) p. 94, col. 1 [defining "allege"].)

On this last point, *Harris* undermines Ververka's position. The *Harris* court concluded that a plaintiff proves a violation of the FEHA only if the plaintiff shows that discrimination was a "*substantial*" motivating factor, "rather than simply *a* motivating factor." (*Harris, supra*, 56 Cal.4th at p. 232.) The court reasoned that this would "more effectively ensure[] that liability will not be imposed based on evidence of mere thoughts or passing statements unrelated to the disputed employment decision." (*Ibid.*; see also *In re Bittaker* (1997) 55 Cal.App.4th 1004, 1009 ["It must be presumed that the Legislature intended reasonable and practical results consistent with its express purpose, not absurd or adverse consequences."].) Likewise, here, we find it highly unlikely the Legislature intended to impose liability on employers whenever a protected disclosure may have had minimal influence

on their employment decisions, as this could easily lead to liability based on nothing more than stray remarks. By adding a second step in section 1102.6 requiring the employer to prove that they would have made the same decision for reasons other than retaliation, the Legislature appears to have intended to allow for an inference of a "direct causal link" between an employee's protected disclosure and the adverse employment action. (*Crawford v. Dist. of Columbia* (D.C. Cir. 2006) 891 A.2d 216, 221 [interpreting a similar whistleblower retaliation statute].) Thus, Ververka's construction of section 1102.6 conflicts with its plain language and could lead to adverse consequences, a result we must avoid.[3]

In his reply brief, Ververka makes two additional arguments, both of which lack merit. First, he points to section 98.7, which authorizes the Labor Commissioner to resolve complaints of unlawful discrimination and retaliation and bring a court action to enforce its determination. (§ 98.7,

---

[3] Although not determinative (see *J.A. Jones Construction Co. v. Superior Court* (1994) 27 Cal.App.4th 1568, 1577–1578), section 1102.6's legislative history seems to support a conclusion that the same decision defense is a complete defense in section 1102.5 cases. Numerous committee bill analyses indicate the Legislature's purpose in codifying the same decision defense was to replace the *McDonnell Douglas* test—which courts consistently applied to section 1102.5 claims (*Lawson, supra*, 12 Cal.5th at p. 710)—with a framework that was more protective of whistleblowers while still allowing an employer to avoid liability on a same decision defense. (Sen. Judiciary Com., Analysis of Sen. Bill No. 777 (2003–2004 Reg. Sess.) as amended Apr. 8, 2003 [citing *McDonnell Douglas* when discussing "[e]xisting case law"]; Assem. Com. on Judiciary, Analysis of Sen. Bill No. 777 (2003–2004 Reg. Sess.) as amended June 17, 2003 [stating that if an employee meets the initial burden, "the employer may nevertheless prevail" by making a same decision showing]; Request for Signature letter to Governor, from Sen. Com. Chair Martha M. Escutia, Sen. Bill No. 777 (2003–2004 Reg. Sess.) p. 2 [stating section 1102.6 would protect whistleblowers by increasing the employer's burden of proof].)

subds. (a), (c).) Ververka seems to contend that when you consider sections 98.7 and 1102.5 together, "the only remedies *not* available to an employee due to the same decision defense would be emotional distress damages and punitive damages." However, nothing in section 98.7 suggests it was intended to limit the effect of the employer's same decision defense in a civil action brought pursuant to section 1102.5. (§§ 98.7, 1102.6.)

Second, Ververka notes that the Sarbanes-Oxley Act provides a similar framework for evaluating whistleblower retaliation claims as that set forth in section 1102.6 but expressly states that " '[r]elief may not be ordered' " if the employer meets its burden to make a same decision showing. (49 U.S.C. § 42121(b)(2)(B)(iv).) He argues that because section 1102.6's legislative history shows the Legislature was aware of the Sarbanes-Oxley Act when it enacted section 1102.6, its failure to include similar language in section 1102.6 was "intentional," indicating the same decision defense was not intended to bar all relief. We do not find this argument persuasive because section 1102.6's legislative history is not "unambiguous" on that point.[4] (*Medical Board v. Superior Court* (2003) 111 Cal.App.4th 163, 179.) Additionally, a single canon of construction cannot "defeat the underlying legislative intent otherwise determined." (*Ferra v. Loews Hollywood Hotel, LLC* (2021) 11 Cal.5th 858, 879.) An interpretation of section 1102.6 that precludes liability where an employer has met its burden at the second step of the statute's framework is consistent with its plain language and gives effect to every phrase and word, including "alleged" and "contributing factor."

---

[4] This legislative history states that according to the sponsor of the bill, "the [same decision] defense is borrowed from federal law, including the Sarbanes-Oxley act," and that it "is currently in use in other jurisdictions, including the District of Columbia." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 777 (2003–2004 Reg. Sess.) as amended June 17, 2003.)

And the result of our holding avoids adverse consequences while accomplishing the apparent purpose of the Legislature to provide procedures for evaluating section 1102.5 claims that expand whistleblower protections. (See *Lawson, supra*, 12 Cal.5th at pp. 712, 716 [section 1102.6 imposes a "heightened burden" on the employer and a lesser burden on the employee].) Thus, considering the legislative background of 1102.6, along with the plain language of the statute and relevant caselaw, Ververka's argument that the omission was "intentional" is speculation, at best. Section 1102.6 is therefore not reasonably susceptible to Ververka's interpretation that an employer's same decision showing does not bar all relief in civil cases brought pursuant to section 1102.5.

Because Ververka does not challenge the jury's findings that CalVet would have made the same recommendation to remove him for legitimate, independent reasons, he is not entitled to declaratory relief on his section 1102.5 claim. He is also not entitled to attorney's fees and costs. (§ 1102.5, subd. (j) ["The court is authorized to award reasonable attorney's fees to a plaintiff who brings a *successful* action for a violation of these provisions," italics added].) We therefore conclude the trial court did not err in denying his motion to vacate the judgment brought pursuant to Code of Civil Procedure section 663. In light of this conclusion, we dismiss CalVet's cross appeal—which argues that this court may affirm the judgment on several alternative legal bases—as moot. (See *Hewlett v. Squaw Valley Ski Corp.* (1997) 54 Cal.App.4th 499, 510, superseded by statute on another ground in *United Farm Workers of America v. Dutra Farms* (2000) 83 Cal.App.4th 1146, 1163–1164.)

15

## III.   DISPOSITION

The judgment is affirmed.  CalVet's cross-appeal is dismissed as moot. Costs are awarded to CalVet.  (Cal. Rules of Court, rule 8.278(a)(2).)

LANGHORNE WILSON, J.

WE CONCUR:

HUMES, P. J.

CASTRO, J.*

*Ververka v. Dept. of Veterans Affairs*; A163571

---

* Judge of the Alameda Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 5/22/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

<table>
<tr>
<td>

DONALD VERVERKA,

    Plaintiff and Appellant,

v.

DEPARTMENT OF VETERANS AFFAIRS,

    Defendant and Respondent.

</td>
<td>

A163571

(Napa County
Super. Ct. No. 18CV001376)

ORDER GRANTING PUBLICATION

[NO CHANGE IN JUDGMENT]

</td>
</tr>
</table>

THE COURT:

    The opinion in the above-entitled matter, filed on May 6, 2024, was not certified for publication in the Official Reports. After this court's review of appellant's request under California Rules of Court, rule 8.1120, and good cause established under rule 8.1105, it is hereby ordered that the opinion should be published in the Official Reports.

 

_____

Humes, P.J.

1

Trial Court: Napa County Superior Court

Trial Judge:      Hon. Victoria D. Wood

Counsel:

Workplace Advocates, Barbara E. Cowan; Elhert Hicks, Allison Elhert for Plaintiff and Appellant.

Rob Bonta, Attorney General, Chris A. Knudsen, Senior Assistant Attorney General, Fiel D. Tigno, Supervising Deputy Attorney General, Joshua C. Irwin and John T. McGlothlin, Deputy Attorneys General for Defendant and Respondent.

*Ververka v. Department of Veterans Affairs* A163571